IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| CURTIS SMITH | § | |
| v. | § | CIVIL ACTION NO. 5:22cv102-RWS-JBB |
| WARDEN, FCI-TEXARKANA | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Smith, an inmate of the Federal Correctional Institution at Texarkana proceeding *pro se*, filed this application for writ of habeas corpus complaining of disciplinary action taken against him. The petition was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Petitioner's Claims**

Petitioner's amended petition is the operative pleading in the case. Dkt. No. 2. In his amended petition and attachments to his original petition, Petitioner says that he was charged with the disciplinary offense of destroying government property in excess of $100, in that he broke a window in the TV room with his cane. Dkt. No. 2 at 5. He contends that the sanctions imposed upon him were too harsh in that he served 23 days in the Special Housing Unit (SHU) even though the disciplinary code provides a punishment of seven days, he was assessed excessive restitution in the amount of $1,243.64, and he received commissary restrictions which were listed at 999 days, but which the document furnished by Plaintiff states was a suspension of commissary privileges until the monetary restitution is paid in full. *Id.* at 4-5

Petitioner acknowledges that he did break the window, but says that a commissary worker named Shaw "belittled, humiliated, and berated" him in front of other inmates on multiple occasions,

1

which caused them to laugh at him and bully him. *Id.* Petitioner says that this caused him to "lose his control and become irresponsible for his action of breaking the glass window accidentally, long after he had left the commissary because the other inmates were still bullying and laughing at [Petitioner] based upon the belittling and humiliating words which were said by Ms. Shaw." *Id.* at 6.

The incident report states that on June 14, 2021, a tech named Avila responded to G Unit housing when a staff member called for the operations lieutenant to step down. Dkt. No. 1-2 at 5. When Avila arrived in G Unit, he saw glass on the floor by the first TV room, and on further inspection discovered a hole in the window. *Id.* After interviews, it was determined that Petitioner had taken his walking cane and hit the window out of frustration, knocking a hole in the window along with multiple cracks. *Id.* Petitioner stated that he did use his cane to cause the damage and that it was an accident, he was just upset about commissary being out of a certain item he was wanting. The price for the window to be replaced is $1243.64. *Id.* at 5.

The hearing report states that Petitioner's due process rights were reviewed and he stated that he understood them. *Id.* at 7. He had no documentary evidence to present and did not request a staff representative. *Id.* The report says that Petitioner declined to make a statement during the investigation, but at a UDC hearing, he said that he accidentally did it because he suffered from anxiety and Shaw talked bad to him at the commissary so he was humiliated. *Id.* At the disciplinary hearing, he said that he was mad because the commissary manager berated him in front of other inmates and they were laughing at him. He stated that he did break the window with his cane but it was an accident. *Id.* A price quote from Pace Glass said that the cost of replacing the window was $1243.64. *Id.* The hearing officer concluded that the greater weight of the evidence supported a finding that Petitioner committed the prohibited act of destroying government proper in excess of $100, a Code 218 disciplinary offense. *Id.*

Petitioner appealed the disciplinary case to the Regional Director on July 7, 2021. *Id.* at 3. In his appeal, he stated that he is mentally ill and takes medications for anxiety, depression, and bipolar disorder; however, his mental condition was not considered by the hearing officer, Guzman, nor was there a finding of competency or responsibility based on an evaluation by mental health staff. *Id.* He stated that he also appealed the assessed monetary restitution and the 7 days of disciplinary segregation. On September 10, 2021, the Regional Director determined that a rehearing should be conducted. *Id.* at 2.

After the rehearing, Petitioner filed another appeal to the regional office on November 10, 2021. In this appeal, he claimed that Disciplinary Hearing Office Guzman is "a racist white supremacy Latino person" who issues harsher punishments against African-American prisoners than against white and Latino prisoners. For example, he says that four inmates in G Unit cell 3 broke out the window in their cell, but none of them were charged or sanctioned.

Petitioner also complained that Guzman did not give him a speedy hearing, resulting in his spending 23 days rather than seven days in SHU, and that it is cruel and unusual punishment to sanction him to three years and four days of loss of commissary privileges and assess him $1,243.64 to replace a window with plexiglass which is installed by one inmate. He finally complained that there should be an investigation of Shaw because of how she humiliated and dehumanized him. (Dkt. No. 1-3, p. 5). The response to this appeal, dated December 3, 2021, says that Petitioner was advised of his rights and afforded the opportunity to exercise his rights, there was sufficient evidence to support the decision, the hearing was conducted in a reasonable amount of time and there is no time frame for a hearing to be conducted, the hearing officer reasonably detailed the evidence, and the sanctions imposed were within policy and commensurate with the finding that Petitioner committed the prohibited act. (Dkt. No. 1-3, p. 3).

Petitioner then filed an appeal to the Central Office, the final step in the administrative remedy procedure. Dkt. No. 1-3. In his appeal, he contended that he received too much time in SHU because the racist white supremacist hearing officer gave him an additional 15 days sentencing enhancement. *Id.* at 2. He says that he actually served 23 days in SHU instead of the seven days mandated in the disciplinary guidelines for a Code 218 violation. Petitioner also asserted that he was charged too much money for the window, saying that when four white inmates broke out an exterior window, they were not charged or put in SHU. *Id.* Petitioner complains that nothing was done about Shaw regarding the way that she mistreated him for over three months whenever he went to the commissary. *Id.*

The response to Petitioner's appeal to the Central Office says that a review of the disciplinary proceedings indicates compliance with Program Statement 5270.09, Inmate Discipline Program. *Id.* at 3. The hearing officer's decision was based on the evidence detailed in the hearing officer's report and that determination was reasonable and supported by the evidence. *Id.* at 1. Petitioner's due process rights were upheld during the process and the sanctions imposed were commensurate with the severity of the offense committed and in compliance with policy. *Id.* at 6.

In his habeas petition, Petitioner argues that Guzman overly sanctioned him in the punishments of 23 days in the SHU, the assessment of $1,243.64 in restitution, and the suspension of commissary privileges for 32 months. Dkt. No. 1 at 1-2. He contends that Guzman was a "racist white Latino supremacist," saying that when four white inmates in Cell 3 broke out the exterior window of their cell, which leads to the outside yard, they did not get an incident report or a charge for attempted escape, nor were they put in SHU; instead, the prison officials just installed a plexiglass window. *Id.* at 2-3.

Petitioner also contends that the regional and central office personnel should have reviewed his

complaint about Shaw and made a more reasonable decision concerning his punishment. *Id.* at 3. He states that Shaw belittled and humiliated him on multiple occasions and that he believes she has become involved in "jailhouse politics" against him because items are left off of his shopping list every time he goes to commissary. *Id.* at 4. When he tells her that items are missing, she becomes belligerent and talks disrespectfully to him. *Id.*

Petitioner also complains that the decision by the regional and central administrators to uphold the determination to punish him so severely was wrong. *Id.* at 5. He says that the punishments imposed by Guzman were cruel and unusual because white inmates are not punished like black inmates are. *Id.* He contends that Shaw caused him to lose control, making him not responsible for his action of accidentally breaking the glass. *Id.* at 6.

## II. Discussion

The Fifth Circuit has held that the purpose of habeas corpus is to grant relief from unlawful imprisonment or custody, and it cannot be used for any other purpose. *Pierre v. U.S.*, 525 F.2d 933, 936 (5th Cir. 1976). Thus, it cannot be used as a springboard to adjudicate matters foreign to the question of the legality of custody. *Id; see also Cook v. Hanberry*, 596 F.2d 658, 660 n. 1 (5th Cir. 1979).

None of the punishments challenged by Petitioner - the 23 days spent in SHU, the assessment of $1,243.64 in restitution, and the 32 months of commissary restrictions - implicate the fact or length of his confinement in prison. *See Garza v. Wilson*, civil action no. 4:20cv575, 2021 WL 639952 (N.D. Tex., January 22, 2021) (dismissing habeas petition challenging a disciplinary proceeding resulting in 18 months' confinement in SHU because "detention in the SHU, in itself, has no impact on the duration of Petitioner's confinement such as to implicate § 2241"); *Satterwhite v. Director, TDCJ-CID*, civil action no. 9:22cv67, 2022 WL 18584510 (E.D. Tex., September 22, 2022), *report adopted at* 2023 WL 1481293 (E.D. Tex., February 1, 2023) (monetary sanctions do not affect the fact or

duration of confinement and are thus not cognizable in habeas corpus); *Marino v. Warden*, civil action no. 11-1763, 2011 WL 6780918 (W.D. La., December 2, 2011), *report adopted at* 2011 U.S. Dist. LEXIS 148503, 2011 WL 6780802 (W.D. La., December 27, 2011) (restrictions of commissary privileges do not state a claim which is cognizable on habeas corpus review).

In *Brown v. McConnell*, civil action no. 1:20cv885, 2020 WL 6051690 (W.D. La., September 24, 2020), *report adopted at,* 2020 WL 6051659 (W.D. La., October 13, 2020), the petitioner Jarvis Brown, a prisoner at the Federal Correctional Institution in Pollock, Louisiana, complained of a disciplinary case in which he received 35 days of disciplinary segregation (15 days of which were suspended), three months' loss of commissary privileges, two months' loss of email privileges, 30 days loss of other privileges, and a $20.00 fine. *Id.* at *1. The district court determined that none of these punishments implicated the fact or length of Brown's confinement and thus could not state a claim for habeas corpus relief. *Id.* On appeal, the Fifth Circuit affirmed this decision, but stated that the fine implicated a property interest, which supported a non-habeas consideration of whether the procedures related to his deprivation of property were constitutionally sufficient; however, the district court did not address whether Brown was denied a property interest or otherwise stated a cognizable civil rights claim where a remedy under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971) is available. *Brown v. McConnell*, No. 20-30671, 2021 WL 5751450 (5th Cir. Dec. 2, 2021). The Fifth Circuit therefore remanded that claim to the district court to "consider whether Brown has alleged a cognizable civil rights claim where a *Bivens* remedy is available." *Id.* On remand, the district court determined that Brown's civil rights claim was barred by *res judicata*, and Brown's appeal of that decision was dismissed for failure to timely file his brief. *Brown v. McConnell*, No. 1:20-CV-885-P, 2022 WL 256590 (W.D. La. Jan. 26, 2022), *appeal dismissed*, No. 22-30077, 2022 WL 3273821 (5th Cir. May 25, 2022).

In accordance with *Brown*, this Court will proceed to consider whether Petitioner's claim of deprivation of property, in the form of the assessment of $1,243.64, alleges a cognizable civil rights claim where a *Bivens* remedy is available. In this regard, the Supreme Court has recognized only three circumstances in which *Bivens* claims can arise. In *Bivens*, the Court held that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim. In *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Court recognized a claim for sex discrimination brought by a congressional staff member, and in *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Court recognized a claim of failure to provide medical care to a prisoner in federal custody.

Beyond these circumstances, the Supreme Court has cautioned against extending *Bivens* to new contexts. *Hernandez v. Mesa*, 140 S.Ct. 735, 744, 206 L.Ed.2d 29 (2020); *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1861, 198 L.Ed.2d 290 (2017). The Court explained that extending *Bivens* to new contexts is a "disfavored judicial activity." *Id.* at 1857; *see also Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (physical altercation and arrest of the plaintiff at a Veterans Administration hospital represented a "new context" to which *Bivens* would not be extended).

Petitioner's challenge to his disciplinary case represents a new context for a *Bivens* claim, and no recognized basis exists for extending *Bivens* to this new context. *See, e.g.*, *Shaw v. Mitchell*, civil action no. 18-0176, 2019 WL 5865777 (C.D. Cal., September 30, 2019), *report adopted at* 2019 U.S. Dist. LEXIS 195021, 2019 WL 5865611 (C.D. Cal., November 8, 2019) (Supreme Court has never extended *Bivens* in the context of a prisoner's due process or equal protection claims arising out of a prison disciplinary proceeding) (citing *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018)); *Schubert v. Mcyntre*, civil action no. 1:19cv66, 2023 WL 2192944 (E.D. Tex., February 1, 2023), *report adopted at*, 2023 WL 2188703 (E.D. Tex., February 23, 2023) (declining to extend

*Bivens* to a challenge to a prison disciplinary case). Consequently, Petitioner does not have a cause of action under *Bivens*.

In any event, adequate evidence supports the finding of guilt in the disciplinary case and the assessment of the $1,243.64 in restitution. Petitioner had a pre-deprivation hearing, and the documents furnished by Petitioner show that he acknowledged breaking the window with his cane and the assessment was based upon a price quote from Pace Glass. A prison disciplinary hearing officer's decision will be upheld when it is supported by "any evidence at all." *Hudson v. Johnson*, 242 F.3 534, 536 (5th Cir. 2001); *see also Smith v. Rabelais*, 659 F.2d 539, 545 (5th Cir. 1981) *and Adams v. Gunnell*, 729 F.2d 362, 370 (5th Cir. 1983). Petitioner has offered nothing beyond conclusory assertions to support his claim that the decision was based upon the racial bias of the hearing officer rather than the evidence presented. To the extent Petitioner's claims may be construed as arising under *Bivens* rather than in habeas corpus, these claims are without merit.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

In order to obtain a certificate of appealability, the petitioner must make a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996); To do this, he must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve

encouragement to proceed further. *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995).

Petitioner has not shown that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. As a result, he is not entitled to a certificate of appealability.

## RECOMMENDATION

It is accordingly recommended that the above-styled application for the writ of habeas corpus be dismissed with prejudice.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

SIGNED this the 2nd day of January, 2024.

9

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE